Order Filed on
**8/23/2013**
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

---

Caption in Compliance with D.N.J. LBR 9004-2(c)
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095-0958
(732) 636-8000
DAVID H. STEIN, ESQ.
JAY B. FELDMAN, ESQ.
*Attorneys for Tin Man Snacks, LLC*

---

| In re: | Case No.: 13-25626 (KCF) |
|---|---|
| TIN MAN SNACKS, LLC, | Chapter 11 |
| Debtor-in-Possession. | Hon. Kathryn C. Ferguson |

**INTERIM ORDER AUTHORIZING DEBTOR TO OBTAIN SECURED CREDIT
FROM AND PROVIDING ADEQUATE PROTECTION TO CRESTMARK BANK**

The relief set forth on the following pages numbered two (2) through thirteen (13) is hereby **ORDERED**.

DATED: 8/23/2013

Honorable Kathryn C. Ferguson
United States Bankruptcy Judge

Page 2
Debtor:         Tin Man Snacks, LLC
Case No. :      13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

---

The Debtor, Tin Man Snacks, LLC, a New Jersey limited liability company (the "Debtor"), having contacted Crestmark Bank (the "Bank") regarding an immediate need of funding and to use cash collateral to continue operations during its Chapter 11 bankruptcy proceeding; the Bank having agreed to provide the necessary funding and the use of its cash collateral upon the conditions set forth below; and the Debtor and the Bank having stipulated and agreed as follows:

A.      On July 17, 2013 (the "Petition Date"), Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Since that time, Debtor has remained in possession of its assets and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Code.

B.      Debtor filed a Motion to obtain secured credit from and to provide adequate protection to the Bank (the "Motion").

C.      Bank previously entered into financing arrangements with Debtor and Guarantors (as hereinafter defined) pursuant to, among others, the following documents (collectively the "Pre-Petition Loan Documents"):

1.      Promissory Note dated April 17, 2012, in the stated principal amount of $500,000, as amended by the Amended and Restated Promissory Note dated February 15, 2013 in the stated principal amount of $750,000 (the "Note");

2.      A Loan and Security Agreement and Schedule each dated April 17, 2012, as amended by Amendment No. 1 to Schedule and Security Agreement dated as of February 15, 2013 (the "Loan Agreement");

3.      The Personal Guarantees dated as of April of 2012 (each a "Guaranty"), of Joseph Glusak, Vincent Mastria and Charles Fern (the "Guarantors"); and

4.      A UCC-1 Financing Statement recorded on April 12, 2012 with the New Jersey Secretary of State, Filing Number 50225231.

D.      Crossroads Financial, LLC claims a junior lien on all personal property of the Debtor.

E.      All capitalized terms not defined herein shall have the meaning given to such terms in the Pre-Petition Loan Documents.

F.      As of July 17, 2013, the Debtor was indebted to the Bank in the approximate amount of $62,695.37 plus fees and costs allowed under the Pre-Petition Loan Documents (the "Pre-Petition Indebtedness").

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Page 3
Debtor:       Tin Man Snacks, LLC
Case No. :       13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

G.     The Pre-Petition Indebtedness constitutes the valid and binding obligations of Debtor and Guarantors to Bank and is secured by the liens and security interests in all personal property of Debtor (the "Pre-Petition Collateral").

H.     Bank's liens and security interests in the Pre-Petition Collateral are valid and properly perfected and are unavoidable and indefeasible in this bankruptcy case or otherwise.

I.     The Bank's liens and security interests are prior to any other interests in the Pre-Petition Collateral.

J.     Debtor asserts that the value of the Pre-Petition Collateral as of the Petition Date is at least equal to the amount of the Pre-Petition Indebtedness and, therefore, the Bank is fully secured.

K.     The Pre-Petition Loan Documents provide for the Bank's dominion of funds and the Debtor has no rights in or authority to use the cash receipts generated in its business operations absent an order of the Court or the agreement of Bank.

L.     To continue the operation of its business during the Chapter 11 reorganization process, Debtor represents that it must use cash collateral and obtain secured financing from the Bank to pay post-petition obligations incurred by Debtor in the ordinary course of its business.

M.     The Debtor desires that the Bank continue its existing line of credit under the terms of the Pre-Petition Loan Documents as modified herein, to enable the Debtor to continue to operate pursuant to the terms and conditions described in this Order.

N.     The Debtor urgently requires financing under Section 364 of the Bankruptcy Code to fund daily operations.  The Debtor's inability to fund daily operations could result in a long-term negative impact on the value of the Debtor to the prejudice and detriment of the Debtor and its creditors, customers and employees.

O.     The Debtor represents that it is presently unable to obtain, in the ordinary course of business or otherwise, unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense, unsecured credit allowable under Section 364(a) or (b) of the Code or secured credit under Section 364(c) of the Code, other than credit from the Bank as provided in this Order pursuant to Section 364(d) of the Code.

P.     Good cause has been shown for entry of this Order.  Among other things, the entry of this Order will minimize disruption of Debtor's business as a going concern and will increase the possibility of a successful rehabilitation, and, therefore, is in the best interest of Debtor, the estate, and its creditors.

Q.     The terms of this Order and the financing contemplated herein have been negotiated at arms-length with all parties represented by experienced counsel, are fair and

#7087342.1(159899.001)

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

reasonable under the circumstances, are for reasonably equivalent value and fair consideration, and are in good faith as that term is used in §364(e) of the Code. Accordingly, Bank in making advances pursuant to this Order is entitled to the protection subscribed in §364(e) of the Code.

R.        This Order is an interim order and the Debtor will provide notice of this Order to the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of the Debtor, the unsecured creditor's committee (if there is one) (the "Committee") and its counsel (if counsel has been retained) and the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d)), and such notice shall constitute sufficient "notice and a hearing," without the need for notification of any further entities under Section 102 of the Code and Bankruptcy Rules 2002 and 4001.

S.        This Order is entered in a "core" proceeding within the meaning of 28 U.S.C. § 157.

**NOW, THEREFORE, IT IS HEREBY ORDERED that:**

1.    The Motion be, and hereby is, granted to the extent set forth below.

**SECTION 1: PRE-PETITION LOAN DOCUMENTS**

1.1        The Pre-Petition Indebtedness constitutes valid and binding obligations of Debtor and Guarantors to Bank, which is secured by all personal property of the Debtor, which liens and security interests are valid and properly perfected. Such liens shall continue pursuant to Section 552(b) of the Code, subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15.

1.2.        Debtor and Guarantors shall not allege or pursue against Bank any defenses, affirmative defenses, counterclaims, claims, causes of action, set-offs, or other rights, whether known or unknown, that Debtor or Guarantor may have or had at any time up to and including the date of entry of this Order, to contest the authenticity, validity, or enforceability of the Pre-Petition Loan Documents, the security interests, or other liens of Bank, or any other matter connected with the Bank's collateral or the existence and payment of the Pre-Petition Indebtedness, subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15.

1.3        The Bank, and its officers, directors, employees, attorneys, stockholders, agents successors and assigns, are hereby released, by Debtor and Guarantors every capacity, and their respective employees, officers, directors, employees, attorneys, stockholders, agents, successors, assigns, or heirs, from all liabilities, claims, causes of action, allegations, or assertions, known or unknown, that they may have or had at any time up to and including the date of entry of this Order, with respect to Bank's actions or omissions with respect to Debtor and Guarantors or to any relationship between Bank and Debtor and Guarantors, subject to the

Page 5
Debtor:            Tin Man Snacks, LLC
Case No. :         13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

rights of the Committee or any party in interest as set forth in paragraph 3.15. As an example and not limitation, the foregoing release includes any claims for breach of an alleged obligation of good faith by Bank or any other claim or cause of action commonly referred to under the rubric of "lender liability."

1.4    The obligations of Guarantors under each applicable Guaranty shall continue.

1.5    The Pre-Petition Loan Documents are incorporated herein by reference and shall be construed and considered as post-petition agreements between Debtor and Bank under this Order (except to the extent inconsistent herewith or modified hereby). The Bank shall continue to have dominion over all funds and the Debtor has no rights in or authority to use cash collateral and receipts generated in its business operations except as provided in this Order, subject to the rights of the Committee or any party in interest as set forth in paragraph 3.15.

1.6    Debtor is hereby authorized to use cash collateral and to borrow money and seek other financial accommodations from Bank and is ordered to perform its obligations hereunder in accordance with the terms hereof. All loans and obligations incurred on or after the petition date by Debtor to Bank pursuant to this Order, and the amount advanced by Bank under the Interim Order if it becomes a final order, are referred to as the "DIP Indebtedness" and, together with the Pre-Petition Indebtedness, as the "Indebtedness". All loans advanced hereunder and under the Interim Order if it becomes a final order will be deemed to be additional loans under the Pre-Petition Loan Documents, subject to the rights and priorities provided herein, and will be advanced by Bank to Debtor and be guaranteed by the Guarantors, as provided in the Pre-Petition Loan Documents. Upon entry of this Order, the Debtor shall be deemed to have unconditionally promised to pay on a secured post-petition basis and the Guarantors shall be deemed to have unconditionally guaranteed all Indebtedness so that the Debtor and the Guarantors shall be jointly and severally liable therefore. Bank shall not be required to provide any financing to Debtor unless and until each Guarantor ratifies and reaffirms the Guaranty in favor the Bank by executing this Order where indicated below.

## SECTION 2: LOAN AUTHORIZATIONS

2.1    Debtor is hereby authorized to use cash collateral and to borrow from the Bank pursuant to the terms and conditions of the Pre-Petition Loan Documents as modified herein (the "Funding") during the term of this Order for the payment of obligations incurred by Debtor in the ordinary course of its business.

2.2    All proceeds and collections of the Pre-Petition Collateral and the DIP Collateral (as hereinafter defined), including the proceeds and collections of the receivables pledged to Bank under the Interim Order, must be forwarded to the Blocked Account at Bank. Bank is hereby authorized to notify all Account Debtors to make all payments to the Blocked Account, to make collection calls and to institute collection action if necessary.

#7087342.1(159899.001)

Until the occurrence of a Default, the proceeds of each Crestmark Account (including those with respect to the Interim Order) that Bank collects will be applied as follows:

(a)    first, to Bank in an amount equal to the Advance on that Crestmark Account whether occurring prior to or after the Petition Date;

(b)    then to Bank in an amount equal to the maintenance fee for that Crestmark Account;

(c)    then to Bank in an amount equal to the interest earned on the Advance at the interest rate set forth herein;

(d)    then to Bank to pay any expenses Borrower owes to Bank (subject only to a final, non-appealable Order that the expenses incurred and paid were unreasonable). The Bank will provide the Debtor, the United States Trustee and a Committee if one is appointed, copies of all its legal invoices and a breakdown of the other Bank Expenses (as defined below);

(e)    then pursuant to the Transaction Subordination Agreement between Debtor, Bank and Crossroads Financial, LLC ("Crossroads"), Crestmark shall forward to Crossroads the proceeds of all PO Accounts on which Crossroads has not received the Release Price (each as defined in the Transaction Subordination Agreement). The automatic stay, to the extent applicable, is lifted to allow Bank to make and to allow Crossroads to accept, the payments described in this subparagraph; and

(f)    last, unless Crestmark elects to withhold all or part of the funds in a reserve for repayment of questionable Crestmark Accounts, to Borrower.

2.3    Provided that the Debtor complies with the requirements of Pre-Petition Loan Documents, including the requirements of sections 2 and 3 of the Loan Agreement, and that the Indebtedness does not exceed the Advance Formula, the Bank may make Advances to the Debtor as working capital.

2.4    Crestmark has the right to charge interest at a rate equal to ten percent (10%) per annum in excess of the Wall Street Journal Prime Rate but not less than thirteen and one quarter percent (13.25%) per annum. As an accommodation to the Debtor, the Indebtedness (including the amounts advanced prior to and under the Interim Order) shall bear interest at a rate equal to five percent per annum in excess of the Prime Rate but not less than eight and one quarter percent (8.25%) per annum. The Indebtedness, including all accrued but unpaid interest, is payable on demand. As incurred, Bank shall be entitled to recover all of its reasonable out of pocket expenses ("Bank Expenses"), including reasonable consultants, attorneys and paralegal fees, costs and expenses, incurred in connection with the Indebtedness, subject only to a final, non-appealable Order that the fees and expenses incurred and paid were unreasonable. The Bank will provide the Debtor, the United States Trustee and a Committee if one is appointed,

Debtor:       Tin Man Snacks, LLC
Case No. :    13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

___

copies of all its legal invoices and a breakdown of the other Bank Expenses.  All other terms and conditions of the Pre-Petition Loan Document shall remain effective.

2.5     The Maximum Amount under the Loan Agreement shall be Four Hundred Thousand Dollars ($400,000.00).

2.6     The Debtor shall have the right to pay the Indebtedness in full prior to the Termination Date.

2.7     Debtor is hereby authorized to borrow from M&F pursuant to the terms and conditions of the loan documents during the term of this Order for the payment of obligations incurred by Debtor in the ordinary course of its business.  The Debtor is authorized to execute and enter into such notes, security agreements and financing statements consistent with the Loan Term Sheet attached hereto as **Exhibit "A"**.  M&F may file UCC-1 financing statements and the automatic stay of 11 U.S.C. 362(a) is modified *pro tanto* to permit such filing.

## SECTION 3:  ADEQUATE PROTECTION

3.1     To secure the DIP Indebtedness (which includes that amount advanced under the Interim Order if it becomes a final order), and as adequate protection for and to protect the Bank against any diminution in the value of the Pre-Petition Collateral, the Bank is hereby granted, pursuant to Section 364(c)(2) and 364(c)(3) of the Bankruptcy Code, a first lien on the Debtor's personal property of any kind and nature whatsoever, whether now owned or hereafter acquired by Debtor, and all proceeds, rents or profits thereof, including all of the Pre-Petition Collateral and any unused or unearned retainers, deposits, or prepaid items (collectively, the "DIP Collateral"), subject to any validly existing lien on personal property of the Debtor other than Accounts.  Any pre-petition security interest or lien on the Pre-Petition Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provisions of the Bankruptcy Code shall be subordinate to the security interests in favor of Bank on the DIP Collateral. **Notwithstanding anything contained herein to the contrary, this Order does not afford Bank a security interest in any Chapter 5 causes of action.**

3.2     All liens and security interests in the DIP Collateral granted to Bank by this Order are deemed duly perfected and recorded under all applicable laws as of the date hereof, and no notice, filing, mortgage recordation, possession, further order or act shall be required to effect or continue such perfection, although Bank may, in its sole discretion, and at Debtor's expense, make any filings or recordations or other acts it deems appropriate with respect to such perfection.

3.3     In consideration of the Funding, Debtor hereby irrevocably waives and is barred from asserting or exercising any right, without (a) Bank's prior written consent, or (b) prior payment and satisfaction in full of the Indebtedness, to (i) grant or impose, under Section 364 of the Bankruptcy Code or otherwise, senior or equal liens on or security interests in any DIP Collateral; or (ii) modify or affect any of the rights of Bank under this Order.

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Page 8
Debtor:         Tin Man Snacks, LLC
Case No. :      13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

---

3.4     The DIP Indebtedness shall have the highest administrative priority under Section 364(c)(1) of the Bankruptcy Code, and shall have priority over all other costs and expenses of administration, including those specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provision of the Bankruptcy Code or otherwise (whether incurred in this case, any conversion of this case pursuant to Section 1112 of the Bankruptcy Code, or in any other proceedings related hereto or thereto). **Notwithstanding anything contained herein to the contrary, the provisions of this paragraph do not afford Bank a security interest in any Chapter 5 causes of action.**

Nothing in this Order constitutes Bank's consent to a Section 506(c) surcharge.

**Notwithstanding the foregoing, Bank's liens on and security interests in the DIP Collateral and Bank's administrative claims under Section 364(c)(1) of the Bankruptcy Code shall be subject to the payment of any unpaid fees payable pursuant to 28 U.S.C. §1930, any unpaid fees payable to the Clerk of this Court or the United States Trustee.**

3.5     Through the Final Hearing (hereinafter defined), and thereafter if this Order becomes a Final Order, all collections and proceeds of any Pre-Petition or DIP Collateral and all other cash or cash equivalents which shall at any time on or after the Petition Date come into the possession or control of Debtor, or to which Debtor shall become entitled to at any time ("Post-Petition Collections") shall be deposited or forwarded into the Blocked Account with Bank and shall be applied to the Indebtedness.  All banks in which any lockboxes and blocked accounts of Debtor exist are authorized and directed to comply with any request of Bank to turn over to Bank all funds therein, or collected after the Petition Date, without offset or deduction of any kind.

3.6     No sale, lease or other disposition of DIP Collateral outside of the ordinary course of business (including collection of accounts receivable or any liquidation, auction or other similar sales) may be done without Bank's prior written consent or pursuant to a Court order after notice to Bank.

3.7     Debtor shall permit Bank and any authorized representatives designated by Bank, including auditors and appraisers engaged by Bank, reasonable access to visit and inspect any of the properties of Debtor during normal business hours and reasonable notice, to review Debtor's financial and accounting records, and to make copies and take extracts therefrom, and to discuss Debtor's affairs, finances and business with Debtor's officers, consultants, and accountants.  Without limiting the generality of the foregoing, Debtor shall promptly provide to Bank and its designated representatives any information or data reasonably requested to monitor Debtor's compliance with the provisions of this Order and to perform audits, appraisals or other valuation analyses of any personal property of Debtor.

3.8     Except as Bank may consent, the terms of this Order shall not be modified by any order (including any confirmation order) or by any plan of reorganization in this case or any subsequent case under the Bankruptcy Code.

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Case 13-25626-KCF   Doc 56   Filed 08/23/13   Entered 08/23/13 13:14:49   Desc Main
Document      Page 9 of 15

Page 9
Debtor:          Tin Man Snacks, LLC
Case No. :       13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank


3.9     All of Bank's rights are expressly reserved if no Final Order is entered. Except as otherwise specifically provided herein, Bank does not waive any rights it has pursuant to the Pre-Petition Loan Documents and Bank shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law. The Bank has no commitment to provide funding beyond (i) the Bank's demand for repayment; (ii) the occurrence of an event of default; or (iii) the Termination Date (as hereinafter defined), provided that the Debtor retains the right to seek to use cash collateral without the consent of the Bank pursuant to an order of this Court.

3.10    The rights and obligations of Debtor and the rights, claims, liens, security interests and priorities of Bank arising under this Order are in addition to, and are not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests and priorities granted by Debtor, as pre-petition debtor, under the Pre-Petition Loan Documents.

3.11    The provisions of this Order shall be binding upon and inure to the benefit of Bank, Debtor and their respective successors and assigns, including any trustees of Debtor in Chapter 11 or Chapter 7.

3.12    If this case is dismissed, Bank's rights and remedies under this Order shall remain in full force and effect.

3.13    Debtor hereby waives any and all defenses (including, without limitation, offsets and counterclaims of any nature and kind) as to the validity, perfection, priority, enforceability and non-avoidability (under Sections 510, 544, 545, 547, 548, 550, 552, 553 of the Bankruptcy Code or otherwise) of the Pre-Petition Indebtedness and the security interests in and liens on the Pre-Petition Collateral in favor of Bank (which liens and security interests are first priority subject only to the liens granted herein). The agreements set forth in this paragraph shall be deemed effective upon the date this Order becomes a final order, subject only to the Committee's (and other's rights if there is no Committee) right to object on the terms and conditions set forth in Paragraph 3.15 below.

3.14    This Court has considered and determined the matters addressed herein pursuant to its powers under the Bankruptcy Code, including the power to authorize Debtor to obtain credit on the terms and conditions upon which Debtor and the Bank have agreed. Thus, each of such terms and conditions constitutes a part of the authorization under Section 364 of the Bankruptcy Code, and is, therefore, subject to the protections contained in Section 364(e) of the Bankruptcy Code except as otherwise provided herein.

3.15    This Order is set for further hearing (the "Final Hearing") before this Court at 11:00 a.m. EST on September 9 , 2013 (the "Final Hearing Date"), at which time any party in interest may present any timely filed Claim Objection. Pending the final hearing, Debtor may borrow up to $ * , which is the amount necessary to avoid immediate and irreparable harm under Bankruptcy Rule 4001(c)(2). Bank shall have no obligations hereunder beyond the Final Hearing Date unless this Order becomes a Final Order.

*    $300,000.00 from Crestmark and $100,000.00 from M&F

#7087342.1(159899.001)


*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Debtor:        Tin Man Snacks, LLC
Case No. :     13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

---

Debtor shall serve a copy of this Order, by regular mail by no later than August 23 , 2013 upon the U.S. Trustee's office, all creditors holding secured claims of record who have an interest in the cash collateral of the Debtor, the Committee (if there is one) and its counsel (if counsel has been retained) and the creditors holding the 20 largest unsecured claims (according to the list filed by Debtor pursuant to Bankruptcy Rule 1007(d)). The notice of entry of this Order and the Final Hearing shall state that Claim Objections shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of New Jersey by September 4 , 2013, which objections shall be served so that the same are received on or before 5:00 p .m. EST on September 4 , 2013 by (i) David Stein, Counsel for Debtor, 90 Woodbridge Center Drive, P.O. Box 10, Woodbridge, New Jersey 07095; and (ii) Thomas E. Coughlin, Esq., Counsel for Crestmark, Jaffe, Raitt, Heuer & Weiss, P.C., 27777 Franklin Road, Suite 2500, Southfield, MI 48034.

Notwithstanding the previous paragraph, the Committee has a minimum of 60 days (or such longer period as the Committee may obtain for cause shown before the expiration of such period) from the date of entry of the order approving the appointment of the Committee's counsel or the final financing order, whichever is later, to investigate and bring as representative of the estate any appropriate proceedings a challenge to the Stipulations set forth herein; or if no Committee is appointed, any party in interest has a minimum of 75 days (or a longer period for cause shown before the expiration of such period) from the date of entry of the final financing order to investigate the Stipulations and file a motion seeking authority to bring as representative of the estate any appropriate proceedings.

The Court may unwind the pay down of the pre-petition debt authorized in paragraph 2.2 above in the event there is a timely and successful challenge to the validity, enforceability, extent, perfection, priority, or amount of the pre-petition Bank's claims or liens, or a determination that the pre-petition debt was undersecured as of the Petition Date.

3.16    Debtor shall not, without Bank's prior written consent, seek to modify this Order. Notwithstanding anything contained herein, if any provision of this Order is hereafter modified, at the Final Hearing or otherwise, by final order of this or any other court, such modifications shall not affect the validity of any DIP Indebtedness outstanding or any right authorized hereby with respect to any such DIP Indebtedness. Without limiting the foregoing, if the Final Order is not entered in accordance with paragraph 3.15, the Debtor shall nonetheless be required to repay any DIP Indebtedness on demand.

3.17    The Debtor, at its expense, shall (a) continue to keep all collateral insured to its maximum insurable value against all loss, peril and hazard and name Bank as lender's loss payable under such policies; and (b) pay any and all post-petition taxes, assessment and governmental charges, except to the extent such are being contested in good faith by appropriate proceedings and Debtor maintains appropriate cash reserves for the expenses being contested, and provide Bank with proof of the foregoing within 3 days of payment. Copies of all federal tax returns, federal tax deposits and other payments made by Debtor during the pendency of this Order shall be timely mailed to Bank.

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Page 11
Debtor:          Tin Man Snacks, LLC
Case No. :       13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

## SECTION 4:  COVENANTS AND REPORTING REQUIREMENTS

4.1     The Debtor shall comply with all covenants and maintain all formulas contained in the Pre-Petition Loan Documents.

4.2     The Debtor will promptly give the Bank prior written notice of the occurrence of any event or any matter which has resulted or will result in a material adverse change in its business, assets, operations or financial condition.

4.3.    Debtor shall deliver to the Bank concurrently with their filing, copies of each report filed with the Office of the United States Trustee if not also filed with the court.

## SECTION 5:  DEFAULT, RIGHTS AND REMEDIES OF THE BANK AND SERVICE

5.1     Each of the following events shall constitute an event of default (an "Event of Default") hereunder:

    (a)   An order dismissing the case, converting the case to Chapter 7, appointing an examiner with expanded powers or a trustee, or terminating the authority of the Debtor to conduct business;

    (b)   Failure of Debtor to make any payment when due;

    (c)   There is a default (other than payments) by the Debtor under this Order or the loan documents; or

    (d)   The Debtor fails to make a payment then due and owing after demand by the Bank.

5.2     Upon the Termination Date (as hereinafter defined) or the occurrence of an Event of Default:

    (a)   The entire Indebtedness remaining unpaid at the election of the Bank and without notice shall become due; and

    (b)   The Debtor's authority to use cash collateral shall cease upon three business days' notice, and the Bank may file a motion for relief from the automatic stay upon five business days' notice, and the Debtor may file a motion for authority to use cash collateral which the Court will hear on an expedited basis.

"Termination Date" shall mean November 28, 2013.  The Debtor and the Bank may agree to extend the Termination Date without further order of the Court, provided, the Bank shall have no obligation to do so.

#7087342.1(159899.001)

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

5.3    The Bank shall have no obligation to advance any funds to the Debtor unless and until:

    (a)    The Debtor has executed such additional loan documents as the Bank may reasonably request; and

    (b)    The Debtor has complied with all the terms and conditions of the Pre-Petition Loan Documents.

## SECTION 6: OTHER RIGHTS, OBLIGATIONS AND PROVISIONS

6.1    Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements that Bank may reasonably require and/or which may otherwise be deemed necessary by Bank to effectuate the terms and conditions of this Order, including, without limitation, such documents as the Bank may deem necessary to correct defects in title and like matters.

6.2    No delay or failure to exercise any right, power or remedy accruing to Bank upon breach or default by Debtor under this Order or any document or agreement shall impair any such right, power or remedy of Bank nor shall it be construed to be a waiver of any such breach or default, nor of any breach or default theretofore or thereafter occurring, nor an acquiescence therein.

6.3    Consent to this Order may be given by counterparts and/or facsimile signatures.

### [SIGNATURES ARE ON THE FOLLOWING PAGE]

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

Page 13
Debtor:            Tin Man Snacks, LLC
Case No. :        13-25626 (KCF)
Caption of Order: Interim Order Authorizing the Debtor to Obtain Secured Credit from and Providing Adequate
Protection to Crestmark Bank

Approvals and Acknowledgements relating to the Order Authorizing Debtor to Obtain Secured
Credit from and Providing Adequate Protection to Crestmark Bank:

**APPROVED AS TO FORM AND SUBSTANCE:**

JAFFE, RAITT, HEUER & WEISS
Professional Corporation

/s/    Thomas E. Coughlin                      /s/    David H. Stein
Thomas E. Coughlin (MI P40561)               David H. Stein (DS-8514)
Attorneys for Crestmark TPG LLC              Attorney for the Debtor
27777 Franklin Road, Suite 2500              90 Woodbridge Center Drive
Southfield, MI 48034                         Woodbridge, NJ 07095
(248) 351-3000                               (732) 636-8000

Dated: August __, 2013                       Dated: August __, 2013

        The undersigned does hereby consent and agree to the foregoing, does hereby ratify and
reaffirm his Guaranty of the Indebtedness, does hereby agree that such Guaranty shall remain in
full force and effect in accordance with their terms, does hereby consent to the entry of this
Order, and does hereby agree that this Order shall not in any way affect his liability under the
Guaranty.

        GUARANTOR ACKNOWLEDGES AND AGREES THAT HE HAS FULLY READ
AND COMPLETELY UNDERSTANDS THIS ORDER AND VOLUNTARILY ENTERS
INTO AND EXECUTES THIS DOCUMENT, AND FURTHER ACKNOWLEDGES THAT
HE HAS BEEN REPRESENTED AND ADVISED OR WAS GIVEN THE OPPORTUNITY
TO BE SO REPRESENTED AND ADVISED BY COUNSEL OF HIS CHOOSING WITH
RESPECT TO HIS EXECUTION OF THIS DOCUMENT.

_____
Joseph Glusak
Date: August __, 2013

_____
Vincent Mastria
Date: August __, 2013

_____
Charles Fern
Date: August __, 2013

#7087342.1(159899.001)

*Approved by Judge Kathryn C. Ferguson August 23, 2013*

# EXHIBIT A

*Approved by Judge Kathryn C. Ferguson August  23, 2013*

## Term Sheet for DIP Loan Secured Loan

Tin Man Snacks, LLC, a debtor and debtor-in-possession in a Chapter 11 proceeding in the United States Bankruptcy Court for the District of New Jersey, Case No. 13-25626-KCF ("Debtor") desires to obtain a revolving line of credit from Lenders not to exceed the sum of $115,000 to be secured by a third security interest in all of the Debtor's assets. Lenders have agreed to provide such a loan on the following terms.

1. Principal: $115,000.
2. Interest rate: zero
3. Monthly payments: zero
4. Due date: upon plan confirmation; conversion to Chapter 7; appointment of trustee; dismissal of case; grant of stay relief to any other creditor.
5. Documentation and preconditions: note; security agreement; UCC financing statements; members resolution; final Order of Bankruptcy Court approving loan, all to the reasonable satisfaction of Lenders' counsel.

#7087744.1(159899.001)

*Approved by Judge Kathryn C. Ferguson August 23, 2013*